The next matter, number 23-1799, Patricia Marilee Lemus-Aguilar v. Merrick B. Garland. At this time, would counsel for the petitioner please introduce himself on the record to begin? Good morning, and may it please the Court. Christian Meyer on behalf of the petitioner. Petitioner brings this petition for review challenging the agency decision. I apologize. I would seek three minutes of rebuttal. You may. Thank you. Petitioner brings this petition for review of the agency determination upholding the denial of her application for asylum on the basis that her articulated particular social group of single Salvadoran mothers with no familial protection lacked particularity as well as a finding that this membership was no more than incidental or tangential to the harm that she received. If I may, I would like to begin with the particular social group cognizability. Now, this Court has recently advanced guidelines for the adjudication of determinations on the cognizability of particular social groups in Espinoza, Ochoa v. Garland. And in that case, this Court found that the Board must be engaging in fact-specific review, not simply basing determinations on the validity of the social group based on the words used. With that said, the record here compelled the finding that no familial protection does provide the definable and concrete boundaries that permit particularity in that it essentially means that Petitioner was living on her own as reflected by the record. Petitioner noted that when she was targeted, she was not living with any family members. And that's also supported by the supporting record that there's various different reports that discuss various different reports that discuss the general societal treatment of women, and specifically mothers and single mothers. So within El Salvador, there's a societally accepted belief that women are the property of the men with whom they have familial and romantic relationships. That's Administrative Record 201. And the BIA did recognize that in its opinion? Yes. That there's gender bias. Yes. It's not like the agency ignored that. It considered it. I believe, yes, they considered it. Not the result you would have wanted, but it did consider it. As to the gender bias, but as to lacking familial protection, it really bases it on a finding that there's no concrete or definable boundary with that statement, where really the record reflected that she was living by herself. She did not have this romantic partner. She did not have a family member that she lived with. And that was a central reason. Does that family protection mean the family living with you? Within the context of this record, yes. And that is the fact-specific approach that should be taken. Now, going back to Espinoza-Ochoa, it wouldn't be fair where a factual record would be granted, in one case, for having particularity. Say this social group was defined as single Salvadoran mother living alone or living alone with her child, but it's denied for particularity where the statement is with no familial protection, where the record points to the exact same thing. She's living by herself. She has a child. And she does not have a family member, specifically a male family member, or a spouse or partner living with her. So within the specific set of facts on this record. The reason why it matters is because there's also social distinction, and social distinction is going to depend on what the group is. So I guess what I'm trying to figure out is, are you saying that we were obliged to treat the claimed group as persons living alone? I believe that that would be the understanding within the context of Salvadoran society, based on the record as it's reflected, which the particularity requirement states that the language used is about the context of the society in question. And the supporting record really goes into not just the gender treatment, but the fact that women are reliant on family members, specifically male family members, for social status and other indicators that would lend this social group to being particularly vulnerable to the type of persecution that she faced. The board also found that, as I read it, that even if she was a member in such a group, that was not a central reason for the claimed prosecution, persecution. Yes. Don't we review that for factual error, for abuse of discretion? Yes. It would be reviewed for clear error, and there was clear error, because both the direct testimony and the supporting evidence point to, obviously there were criminal motivations, but she was targeted specifically due to her vulnerabilities. And why do you say there was evidence of that, much less evidence that was so strong that the board was required to find it? So her direct testimony was, when she was asked, why were you threatened? Because it was only the two of us alone. We were vulnerable before that. Well, that's her explanation, but it doesn't recite any facts. In other words, the persecuting party isn't alleged to have said or done anything that would lead you to that conclusion. That's where the supporting record that details, throughout several different declarations, details not only general societal treatment of women and mothers, but treatment by the gangs and viewpoint towards women. So gangs, like society in general, view women as the property of men. That's AR204. And specifically, mothers are known to be more likely to tolerate high levels of abuse, because they are responsible for their children. That's AR201. So the context of the nexus question is not just the direct testimony, which supports her nexus assertion. I forget the record. When she says the two of us, who's the second person? Her child, her daughter. How old is the child? I believe at the time she was eight years old. Thank you. Thanks. Thank you, counsel. At this time, counsel for the respondent will please introduce herself on the record if you can. Good morning, Your Honors. Tatiana Pino for the Attorney General. This court should deny the petition for review and can do so on one of two independently dispositive grounds, either particular social group or nexus, because each is supported by substantial evidence. And at the very beginning, I want to clarify the standard of review. I think there was mention of clear error. That's incorrect. The standard of review is the highly deferential substantial evidence standard. Under that standard, this court cannot reverse the agency's factual findings if any reasonable adjudicator could have found, as the agency did here. And both the particularity determination and nexus determination are reviewed under this highly deferential substantial evidence standard. Respondent recommends starting with a particular social group issue because this court's precedent, namely, Enamorado Rodriguez v. Barr, which petitioner never attempts to distinguish, and Aguilar de Guillen squarely foreclose the possibility that her particular social group, defined by the term no familial protection, lacks or is sufficiently particular to be cognizable. And because the record does not compel reversal of this determination alone, the court need not go further and can deny the petition for review. Turning quickly to the assertions that petitioner just raised, petitioner is attempting to redefine her PSG before this court, which is impermissible. Specifically, petitioner is asserting that the PSG is now single mothers living in El Salvador who live alone or who live alone with their child. That is simply not the particular social group that petitioner, who was represented by same counsel before the agency, raised to the agency. This particular social group is therefore not exhausted and the court should decline to consider it. And I encourage the court to look at its own precedent, namely, Chun Mendez v. Garland, 96 F. 4th at 66. That is a case that was published earlier this year. And Granada Rubio v. Lynch, 814 F. 3rd at 38 to 39, published in 2016. Let me ask you, what was the PSG argued below? The only particular social group that was raised was single mothers in El Salvador living with no familial protection. And that particular social group failed because no familial protection is too ambiguous, too amorphous to satisfy the particularity requirement. And that is wholly consistent with Enamorado Rodriguez, which the particular social group in that case there was, I believe, enduring children lacking parental protection. Arguably, parental protection is a narrower category of people than familial protection. Therefore, the agency's determination is squarely consistent and reasonable under this court's own precedent. And let me ask, the way he described the PSG for purpose of the appeal, doesn't it overlap? Or in your opinion, it's totally different? Overlap with what? With the one raised below. Because it's kind of similar in the language. Well, that's not really the issue. The issue is what the agency had at the time. That's exactly right. What the agency was analyzing, what was before it. He could have argued before the immigration judge. He could have argued before the board. You should consider it like this. You should consider no familial protection to really mean living alone, living alone with your child. He never raised that. Or he could have raised alternate versions below as well. That's exactly right. The petitioner is not limited to raising only one particular social group. He could have raised varieties and seen what the agency, you know, which one they thought was persuasive. Moreover, the agency determination is entirely reasonable on this record, where petitioner admitted to the immigration judge in her testimony that, you know, although she claimed to lack familial protection, she in fact sought her own father's protection in El Salvador from the gang for about two weeks before coming to the United States. So as the agency says at record page 4 and 40, she doesn't even appear to be a member of her own group. Or at least it's unclear what no familial protection means in her specific context. That is entirely reasonable and supported by substantial evidence. If there are no – well, last point on particularity. Petitioner relies heavily on the generalized reports that counsel just discussed. Petitioner never grapples with her own admission that I just relayed to the court. Moreover, petitioner is asking this court to operate off of a mere hunch or a belief as to what the gang members in her circumstance thought or believed about her. This court has held that under the highly deferential substantial evidence standard, the court cannot overturn the agency's determination based on such guesswork or hunch. And that comes from Jimenez-Portillo, which I believe is a 2022 case by this court. If there are no further questions on particular social group, I'll briefly touch on the nexus issue. And the petitioner concedes there's no dispute that the agency properly found that the central motivation for her harm was the gang's criminal desire to help – to coerce her into helping them with their drug activities. The only dispute is whether the protective ground that she's asserting, whether the record compels the conclusion that it was more than subordinate to that central motivation. And the agency's determination that it was merely subordinate is entirely consistent with Barney Calopas v. Garland and Beyonce Martinez v. Sessions, given that there is evidence here that the gang also targeted her neighbor, who all we know about the neighbor is that she is also female, but she lives with her family. Therefore, the gang targeted someone who does not appear to be a single Salvadoran mother with no familiar protection. And consistent with the case law I just mentioned, the record does not compel finding that a protected ground is a central reason for harm, whereas here, the persecutors also targeted people who do not share in the protected characteristic. Further, the agency recently determined that it's unclear to what extent the specific gang members who targeted Petitioner knew or believed that she was single, Salvadoran, or lacked any familial protection. And this court has said in Jimenez v. Garland, and I'd like to add Chief Judge Barrett and Judge Cayata, you were panel members of that case. The court said there must be evidence that the would-be persecutors knew or believed that Petitioner held a particular characteristic and, in addition, targeted her for that reason. The record does not compel the conclusion here. The agency fully recognized Petitioner's argument that she believed that the gang perceived her to be vulnerable, but as Judge Cayata pointed out, that is nearly her own belief. There is no evidence in the record that the gang members knew or believed this about her. Your Honors, if there are no further questions, respond to respectfully request that you deny this petition for review. Thank you. Thank you. Thank you, Counsel. At this time, if Counsel for the Petitioner would please reintroduce himself on the record. He has a three-minute rebuttal. Christian Meyer for the Petitioner. Going back to the particularity discussion, all of the cases cited where the assertion is that the particular social group that was denied on particularity was substantially similar, in each of those cases, this court made that determination on a finding that the record advanced by Petitioner did not support the particularity. So the distinguishment under Espinoza-Ochoa is that this record specifically does support the particularity of this social group. Now turning to the assertion that Respondent was not a member because she fled to her father's home. At the time that she was initially approached, when she was targeted, she was lacking familial protection. She was living on her own. She did not have family there to support her. Now moving to Nexus. Why does that follow? If your theory is that the persecutors would go after someone who they know isn't sort of backed up by a male, if they know that she's got a father who lives in the same area, how does that fit your theory? The father did not live in the same area. He lived, I believe, 40 minutes or so away. And you think that's far enough that they would not fear retaliation from him? I believe that based on the record, as she explains it, she was approached in her home by these gang members. So everything that they're seeing is in the context of her direct home. So no, they would not have knowledge that she had any means of support outside of her living as a single parent. Now moving back to the Nexus, yes, there is no doubt that gangs threaten different segments of Salvadoran society, but a matter of MEGB 26INN Decision 227, that doesn't preclude a finding just because a persecutor goes after multiple different segments of society, where there is a showing that... Is there anything direct in the record about the motivation of the persecutors? Her statements, so... Did she say anything about what she heard them say? So in relation to that, she directly states why she was being targeted. As I said... Right, but in saying that, does she say they said anything? So this is a question on direct and response. Why did they say they were going to harm your daughter? Because that is the only thing I had, the most valuable thing. So that points directly to the fact that these threats that are being made are directly related to the fact that she's a single mother, and they're exerting that pressure to... on an ulterior motive in advancing their criminal schemes, but the fact that she is vulnerable and has this point where they can exercise pressure in a manner that ensures that they meet their end establishes that it was not incidental or tangential, but a direct reason that she was directly targeted. Thank you. Thank you. Thank you, counsel. That concludes arguments.